UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SPRINT NEXTEL CORPORATION and SPRINT COMMUNICATIONS COMPANY, L.P., | ) ) ) ) | |
| Plaintiffs, | ) ) | CASE NO.: 4:13-CV-01292-AGF |
| v. | ) ) | |
| JAMIE D. YOAK, | ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF SPRINT'S
EMERGENCY MOTION TO INITIATE CRIMINAL CONTEMPT
PROCEEDINGS AGAINST DEFENDANT JAMIE YOAK**

Plaintiffs Sprint Nextel Corporation and Sprint Communications Company, L.P. (together, "Sprint") submit this Memorandum of Law in Support of their Emergency Motion to Initiate Criminal Contempt Proceedings Against Defendant Jamie D. Yoak ("Yoak"). Yoak has recently resumed her efforts to fraudulently access Sprint's customer accounts, causing significant and ongoing harm to Sprint and its customers, necessitating this emergency motion to stop her misconduct.

**BACKGROUND**

Sprint filed this case in July 2013 to address a pattern of fraudulent activity by Yoak that included making multiple calls to Sprint's Customer Care Department and obtaining access to Sprint's customers' accounts by, among other things, misrepresenting herself to be a Sprint employee or customer. [DE 1]. Yoak's misconduct caused significant harm to Sprint and its customers, and included theft of "vanity" phone numbers by Yoak, which she resold for substantial profits. Sprint obtained a permanent injunction against Yoak prohibiting her from engaging in her misconduct on

October 25, 2013 [DE 19], and following several days of evidentiary hearings on whether Yoak had been properly served with process, the Court entered final judgment against Yoak on Sprint's claims in the amount of $655,440.42. [DE 86] [1]. Yoak was previously sued in this Court for engaging in identical conduct by T-Mobile, which also obtained a permanent injunction and final judgment against her. *T-Mobile USA, Inc. v. Jamie D. Yoak, et al.,* No. 4:10-CV-02244-AGF, Final Judgment and Permanent Injunction (E.D. Mo. Mar. 30, 2012).

The Court's permanent injunction *immediately* and *permanently* enjoined Yoak from, among other things:

> d.  contacting or communicating with Sprint, its customers, or any other telecommunications company for the purpose of, or in any way related to, accessing or altering a Sprint customer's account without authorization, unlawfully porting a telephone number related to a Sprint customer, or otherwise perpetrating a fraud or deception of any kind involving Sprint or a Sprint customer;
>
> e.  harassing Sprint or its customers;
>
> f.  accessing Sprint's computers through any deceptive means, including but not limited to deceptive statements to Sprint customer service representatives intended to cause them to access Sprint computers, online account access via the internet, and calls to Sprint's telephone automated systems;
>
> g.  using or encouraging or permitting others to use false or fraudulent names and/or identities or illegally posing as a Sprint customer in any communications to, with, or regarding Sprint;
>
> . . . [and]
>
> i.  making, encouraging, or permitting others to make false representations that Defendant or anyone working with or on her behalf is associated or affiliated in any way with Sprint[.]

[DE 19 at p. 4].

---

[1] Yoak's appeal of the final judgment was dismissed by the Eighth Circuit Court of Appeals on January 26, 2015. [DE 151 & 152].

Sprint obtained evidence that Yoak violated the permanent injunction numerous times, beginning at least as early as March 2014, and Sprint filed a motion seeking to hold Yoak in contempt on May 5, 2014. [DE 52 & 53]. The Court conducted evidentiary hearings on Sprint's motion over the course of three days in November 2014 and February 2015, during which Sprint presented extensive evidence of at least nineteen (19) instances of Yoak violating the injunction between March and October 2014 by, among other things, attempting to access Sprint customer accounts through fraudulent phone calls to Sprint's Customer Care Department. Yoak did not deny making the fraudulent calls to Sprint, but argued that (a) she was not aware of the injunction at the time, and (b) she did not know that the injunction covered all of Sprint's brands of phone service. *See, e.g.,* Yoak's Post-Hearing Brief, DE 216 at pp. 4-13. No Order has yet been entered on Sprint's motion.

**YOAK'S LATEST VIOLATIONS OF THE INJUNCTION**

Less than two weeks ago, Sprint discovered that Yoak has resumed her attacks on Sprint and its customers, in blatant violation of the Court's injunction. During the first week in August 2015, Sprint identified twenty-seven (27) fraudulent calls made by Yoak to Sprint, targeting five (5) different customer accounts. All twenty-seven (27) calls were made from Yoak's home phone number. All of the calls were made directly to Sprint's Customer Care Department, not to one of Sprint's other brands. So far, Sprint has obtained recordings of eight (8) of the fraudulent calls made by Yoak, and Sprint is continuing to look for additional calls and recordings. The recordings and transcripts of the recordings are attached to the Declaration of Clint Breithaupt (cited as "Breithaupt Dec."), filed contemporaneously herewith.

At the beginning of each recorded call, the Sprint representative begins by saying "Thank you for calling Sprint." Breithaupt Dec. at ¶ 7. In every call, Yoak misrepresents herself as a fellow

Sprint employee, claiming to be from Sprint "Customer Care." *Id.* Yoak uses this ruse in an attempt to gain unauthorized access to the Sprint customer accounts. *Id.* Yoak also directly contacted and spoke with at least one of the Sprint customers. *Id.* She also attempted to call each of the other Sprint customers, again from her home phone number. *Id.*

Sprint's fraud investigators analyzed the various accounts attacked by Yoak in an effort to determine why she selected those accounts and try to predict where she would strike next, so they could attempt to protect other customers. Unlike her previous misconduct, Yoak's recent attacks did not appear to be part of a scheme to steal and resell vanity phone numbers. The investigators determined that several of the accounts shared one common contact with an individual named F.P.[2] *Id*. at ¶ 8. Further investigation revealed that F.P. and Yoak had a brief romantic relationship. *Id.* Yoak is apparently seeking to access and manipulate the Sprint accounts of individuals with whom F.P. communicated, and obtain their confidential personal information. *Id.*

Mr. Breithaupt contacted each of the Sprint customers targeted by Yoak (with the exception of J.M., who could not be reached before the filing of this Motion), and learned that none ever gave Yoak permission to access their Sprint accounts. *Id.* at ¶ 9. With the exception of one customer (R.K.), none of the customers had ever even heard of Jamie Yoak. *Id.*

Sprint was able to readily identify Yoak as the perpetrator of the twenty-seven (27) calls identified so far because the calls came from Yoak's home phone. However, in light of the high volume of calls in such a short period of time, the blatant fraudulent nature of Yoak's misconduct, and her utter disregard for this Court's orders and authority, Sprint has every reason to believe that Yoak has made and continues to make additional fraudulent calls, even as this Motion is being filed. *Id.* at ¶ 6. Sprint's investigation is ongoing. *Id.*

---

[2] To protect the personal information of Sprint customers, Sprint uses initials and blanks in place of names and intends to request that the supporting evidence be filed under seal.

As with all her previous episodes of fraudulent activities directed at Sprint and its customers, Yoak demonstrates a zealous and relentless obsession with obtaining the information and access she is seeking that borders on the pathological. Yoak will persist in her misconduct until she can access the accounts and obtain her victims' personal information. *Id.* at ¶ 10. Once Yoak possesses her victims' information, she will use it to steal their identities, order devices on their accounts, change their phone numbers, disconnect their service, or engage in other invasive, costly and disruptive unauthorized actions. *Id.* Yoak has a long history of engaging in such bizarre and harmful conduct.[3]

The Sprint customers who have been targeted by Yoak understandably feel stressed and upset over the intrusion into their accounts. *Id.* at ¶ 11. Sprint seeks relief on an emergency basis because theft of the customers' personal information and phone numbers would cause irrevocable harm to the customers and to Sprint. Yoak's relentless violations make it clear that the Court's permanent injunction and award of damages are insufficient to stop her misconduct. Sprint therefore seeks the commencement of a criminal contempt proceeding against Yoak, in the hope that incarceration will prevent her from committing further violations of the Court's orders and the rights of Sprint and its customers.

## SPECIFIC EXAMPLES OF YOAK'S VIOLATIONS OF THE INJUNCTION

The following examples of Yoak's recent violations of the permanent injunction demonstrate that a conviction of criminal contempt is warranted. Yoak's previous excuses that she did not know

---

[3] Yoak's misconduct has resulted in other court cases in addition to the cases that have been prosecuted in this Court against Yoak by T-Mobile and Sprint. For example, in 2004 Yoak was sued in St. Charles, Missouri Circuit Court by a man named David Costello, who sought an order of protection against Yoak, and claimed that Yoak was his ex-girlfriend who became enraged when he broke up with her and she proceeded to obtain his cell phone information and contact everyone he knew in an effort to ruin his life. *Costello v. Yoak,* Case No. 04FC125554, Circuit Court, St. Charles County, Missouri. A true and correct copy of Costello's detailed complaint against Yoak is attached hereto as **Exhibit A.**

the injunction had been entered, and that she was not aware that the injunction applied to Sprint's other brands, are no longer available to her.

### A. Yoak's Fraudulent Call to Sprint Regarding J.H.'s Account

On August 2, 2015 at 12:18 P.M., Yoak attempted to access several Sprint customer accounts in one call. Breithaupt Dec. at ¶ 12, Ex. 1 (audio recording), Ex. 2 (transcript of audio recording). She placed the call from her home telephone number. *Id.* The Sprint representative identified Sprint immediately: "Thank you for calling Sprint. This is Richard. How can I help you?" *Id.* Yoak misrepresented herself as a fellow employee from Sprint Customer Care, and used an internal Sprint term – "BAN" – in an effort to credibly demonstrate that she was a Sprint employee: "This is Chris from Care. Can you pull up a BAN[4] please?" *Id.* After Yoak provided the phone number, she continued to lie to the representative, telling the Sprint representative to "bypass" security features on the account and successfully duping the representative into providing her with the name on the account, which she did not know previously:

| | | |
|---|---|---|
| **Sprint:** | Alright. Thank you. And how 'bout your name on the account? | |
| **Yoak:** | It should be J_____. Are you seeing that? | |
| **Sprint:** | Alright. What about the ma'am, the security PIN. Do you know the security PIN on the account? | |
| **Yoak:** | Childhood best friend; childhood best friend, but you can bypass. | |
| **Sprint:** | Uh-huh. What would be the answer for the childhood best friend? | |
| **Yoak:** | Ma'am, sir, you can bypass it. Are you, do you have the right account pulled up? | |
| **Sprint:** | Let me just check here. | |
| **Yoak:** | Really, I just gave you the name. Read back the name I just gave you. | |
| **Sprint:** | And how can I help you today? | |

---

[4] "BAN" is a term Sprint uses to identify its accounts. The acronym stands for "billing account number."

| | | |
|---|---|---|
| **Yoak:** | Okay. Read back the name on the account that I just gave you. | |
| **Sprint:** | It's J_____ H_____, right? | |
| **Yoak:** | Wha… I'm sorry, J_____ what? | |
| **Sprint:** | H _____. | |
| **Yoak:** | Spell it please. | |
| **Sprint:** | Yeah. Sure, I got already the account. | |
| **Yoak:** | Okay. Spell the last name please. It doesn't sound right. | |
| **Sprint:** | It… it will be H _____. | |
| **Yoak:** | H _____? | |
| **Sprint:** | Yes. | |

*Id.*

Yoak did not have authorization to access J.H.'s account or to make changes to her Sprint account. Breithaupt Dec., ¶ 11; J.H. Dec. ¶ 6. J.H. has never met and does not know Jamie Yoak. *Id.* J.H. has never given Yoak the password or permission to access J.H.'s Sprint account. J.H. Dec. ¶ 6. J.H. has been a Sprint customer for approximately two years. *Id.* at ¶ 2. J.H. uses her Sprint phone for personal use, as her contact number for emergencies, and for her employer to contact her. *Id.* at ¶ 3. She relies on it every day to stay in contact with her minor child as well as with other family and friends. *Id.* Her Sprint phone is the sole method for contacting her and contains all of her contacts. *Id.* J.H. is very concerned about Yoak's attempts to access her Sprint account without authorization and it causes her considerable stress. *Id.* at ¶ 7. F.P. is an acquaintance of J.H. *Id.* at ¶ 8.

### B. Yoak's Fraudulent Call to Sprint Regarding C.W.'s Account

On August 2, 2015 at 12:25 p.m., immediately after hanging up from the previous call, Yoak called Sprint again attempting to gain access to the account of Sprint customer C.W. Breithaupt Dec. at ¶ 13, Ex. 3 (audio recording), Ex. 4 (transcript of audio recording). Again, the representative

immediately identified herself as being from "Sprint." *Id.* Yoak responded that she was from "Care" and attempted to gain access to the account by telling the Sprint representative that the account had already been authenticated:

| | | |
|---|---|---|
| **Sprint:** | | Uh-huh. Are you calling on behalf of Mr. C.W.? |
| **Yoak:** | | Yes. |
| **Sprint:** | | All right, and you're from the store or from what department? |
| **Yoak:** | | No, um, Care, Care. |
| **Sprint:** | | All right. Can I have the PIN to access the account? |
| **Yoak:** | | I just bypassed it. I used he, or he used the security question. |
| **Sprint:** | | What's the security question answer, first employer? |
| **Yoak:** | | Um, I don't. He answered and so he's verified. |
| **Sprint:** | | I'm sorry? |
| **Yoak:** | | He's verified ma'am. He's already authenticated. |
| **Sprint:** | | You're from Care? |
| **Yoak:** | | From Care, yes ma'am. |

*Id.*

### C. Yoak's Fraudulent Call to Sprint Regarding J.M.'s Account

A few minutes later, on August 2, 2015 at 12:58 p.m., Yoak called Sprint again. *Id.* at ¶ 14, Ex. 5 (audio recording), Ex. 6 (transcript of audio recording). The representative began the call with "Thank you for calling Sprint." *Id.* In this call, Yoak attempted to gain access to J.M.'s account by representing herself as "Chris from Care, Customer Care." *Id.* In her effort to trick the Sprint representative into providing account information, Yoak told the Sprint representative that the Sprint customer was getting collection calls "like from an auto dialer" and Yoak wanted the Sprint representative to look into the account. *Id.* Fortunately, Yoak was unsuccessful in accessing this customer's account during this call. *Id.*

### D. Yoak's Fraudulent Calls to Sprint Regarding R.K.'s Account

On August 4, 2015 between 10:24 a.m. and 11:42 a.m., Yoak called Sprint many more times. Recordings of five (5) of those calls are available and annexed to Mr. Breithaupt's declaration. *Id.* at ¶ 15, Ex. 7, 9, 11, 13, and 15 (audio recordings), Ex. 8, 10, 12, 14, and 16 (transcripts of audio recordings). During the first call, Yoak attempted to gain access to R.K.'s Sprint account. *Id.* at ¶ 16, Ex. 7 (audio recording), Ex. 8 (transcript of audio recording). The representative again began the call with "Thank you for calling Sprint," and Yoak again lied by identifying herself as "Chris from Customer Care." *Id.* Yoak attempted to gain access to the account by telling the Sprint representative that the customer was getting collection calls and Yoak wanted the Sprint representative to look into the account. *Id.* Fortunately, Yoak was unsuccessful in accessing this customer's account during this call. *Id.*

Yoak again tried to access this account at 10:55 a.m. *Id.* at ¶ 17, Ex. 9 (audio recording), Ex. 10 (transcript of audio recording). Yoak tried to learn information about the account – this time by trying to guess the first letter of the account holder's last name:

| | | |
|---|---|---|
| **Yoak:** | …I told you eight times the account holder his name is Christopher. Now tell me the first initial of the last name. | |
| **Sprint:** | I don't have that option. Can you mention it? | |
| **Yoak:** | Sir. It's on the account. | |
| **Sprint:** | Yes. But I don't have any authorization… | |
| **Yoak:** | The letter… | |
| **Sprint:** | To give you the information on the account. | |
| **Yoak:** | The letter "A." Is that what you have? | |

*Id.* Fortunately, Yoak was unsuccessful in gaining any further information on this call. *Id.*

Yoak called yet again at 11:01 a.m., trying to obtain information about the account *Id.* at ¶ 18, Ex. 11 (audio recording), Ex. 12 (transcript of audio recording):

| | | |
|---|---|---|
| **Yoak:** | | I don't, sir. Fifteen times, I don't have a customer on the line. Who's, what account do you have pulled up? You said Christopher Mates? What did you say the last name was that, sounds… |
| **Sprint:** | | Ma'am, listen, listen. |
| **Yoak:** | | No, I'm not listening. I've worked here for 12 years. I said, you gave me a last name. What did you say that was because it doesn't sound like that's who I have. |
| **Sprint:** | | Because ma'am, we are not allowed to disclose any information on the customer's account. |
| | . . . | |
| **Sprint:** | | Are you really from Customer Care? |
| **Yoak:** | | Stop asking me questions. I've answered these four times. You need to learn to speak English. I'm going to disconnect. I need an English speaking person, colleague. |

*Id.*

Yoak called again at 11:15 a.m. *Id.* at ¶ 19, Ex. 13 (audio recording), Ex. 14 (transcript of audio recording). As with all the other calls, the Sprint representative immediately identified as being from Sprint, and Yoak fraudulently misrepresented herself as "Chris from Care." *Id.* Yoak was insistent that the Sprint representative "bypass" the security PIN and security question because Yoak purportedly "works for the company":

| | |
|---|---|
| **Yoak:** | The customer verified with the first pet's name. |
| **Sprint:** | Okay. What's the first pet's name? |
| **Yoak:** | You'll have to bypass it. I believe it was just simply dog but just bypass it. |
| **Sprint:** | We can't for security purposes. We cannot bypass that one. |

| | |
|---|---|
| **Yoak:** | Not when you work for the company, ma'am! |
| **Sprint:** | We need to authenticate. Even if you work for the company. |
| **Yoak:** | Okay. Click on reveal please. |
| **Sprint:** | Again? |
| **Yoak:** | Click on reveal for the pet's name. |
| **Sprint:** | Okay. Let me go ahead and check if we are allowed to bypass the account, okay? |
| **Yoak:** | Just click on reveal! You'll see what it is. |
| **Sprint:** | We can't again, for security purposes we are not allowed. . . |
| **Yoak:** | Ma'am, ma'am please. I'm not looking for advice. I've worked here 12 years. Click on reveal. |

*Id.* Fortunately, Yoak was not able to access the account during this call. *Id.*

In the fifth call regarding this account in under an hour (at 11:42 a.m.), Yoak again claims that the customer is getting collections calls and Yoak tries to convince the Sprint representative to bypass the security features or "reveal" the answer to the security question. *Id.* at ¶ 20, Ex. 15 (audio recording), Ex. 16 (transcript of audio recording). Yoak was not able to access the account during this call because Sprint placed a fraud alert on the account. *Id.* Because of Yoak's prior attempts to access this account, Sprint Fraud Manager Clint Breithaupt changed the password on the account to "Clint sees you." *Id.* Once Yoak was informed of this password by the Sprint representative, she knew she was being monitored and she quickly ended the call. *Id.*

### E. Yoak's Improper Contact With Sprint Customers

In addition to all of the above fraudulent calls to Sprint Customer Care, Yoak also violated the Permanent Injunction by contacting Sprint customers for improper purposes. Specifically, on August 4, 2015, Yoak contacted Sprint customer R.K. Yoak identified herself as Jamie Yoak. *Id.* at ¶ 21. R.K. had previously met Jamie Yoak on two occasions. *Id.* During the call, Yoak told R.K. that Clint [Breithaupt] from Sprint would be contacting R.K. *Id.* Yoak told R.K. not to cooperate

with Mr. Breithaupt. *Id.* In addition, Sprint customer J.H. received an influx of restricted and unidentified calls at odd hours. *Id.* at ¶ 21, J.H. Dec. at ¶ 4. Sprint believes that many of the calls were placed by Yoak because they were from "spoofed" numbers – a common practice used by Yoak. Breithaupt Dec. at ¶ 21. In addition, on August 12, 2015, Yoak called each of the customers – *from her home phone number. Id.*

**YOAK SHOULD BE PROSECUTED FOR CRIMINAL CONTEMPT**

The Court has authority to punish Yoak's repeated violations of the permanent injunction by charging her with criminal contempt:

> A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as –
>
> . . .
>
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.S.C. § 401.

Intentional violations of injunctions and other court orders are frequently the basis for criminal contempt convictions. *See, e.g., In re Medlock,* 406 F.3d 1066, 1073 n.2 (8th Cir. 2005) ("willful violations of court orders sufficient for the court to hold [defendant] in contempt."); *U.S. v. Agnew*, 878 F.2d 219 (8th Cir. 1989) (criminal contempt conviction for violation of permanent injunction affirmed); *U.S. v. Gibbons*, 968 F.2d 639, 643 (8th Cir. 1992) (affirming criminal contempt conviction for violation of preliminary injunction); *U.S. v. Rauch*, 717 F.2d 448, 451 (8th Cir. 1983) (criminal contempt for violation of injunction is appropriate, particularly where defendant has a history of violations).

Yoak's multiple violations of the Court's Permanent Injunction are knowing and intentional. She can no longer claim she is unaware of the injunction. At the evidentiary hearing

on April 24, 2014, the Court personally handed a copy of the injunction to Yoak and noted that fact for the record, saying: "I am handing it to you. Will the record reflect that I'm handing it to Ms. Yoak." Transcript of hearing on April 24, 2014, at p. 170. [DE 48]. Likewise, Yoak's previous assertions that she did not know the injunction applied to Sprint's other brands, or that those brands were affiliated with Sprint, is unavailable. In each and every recorded call, the representative begins by saying "Thank you for calling Sprint."

PROCEDURE FOR INITIATING CRIMINAL CONTEMPT PROCEEDINGS

Federal Rule of Criminal Procedure 42(a) describes the process for initiating and conducting a criminal contempt proceeding when the contemptuous conduct is not personally observed by the Judge. The Federal Judicial Center's Benchbook for U.S. District Court Judges, in section 7.01, also provides guidance on how to administer a criminal contempt proceeding.

The Court is required to provide the defendant with notice, by an order to show cause or an arrest warrant, that (A) states the time and place of the trial; (B) allows the defendant a reasonable time to prepare a defense; and (C) states the essential facts constituting the charged criminal contempt and describes it as such. FED. R. CRIM. P. 42(a)(1). For the Court's convenience, a proposed form of order to show cause is attached hereto as **Exhibit B**, and a proposed form of arrest warrant is attached hereto as **Exhibit C**.

The Rules also require the Court to ask an attorney for the government to prosecute the contempt charge, but another attorney may be appointed if required in the interest of justice or if the government refuses to prosecute the case. FED. R. CRIM. P. 42(a)(2). However, counsel for an interested party in the underlying civil action may not be appointed as prosecutors in a related criminal contempt proceeding. *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 802, 107 S.Ct. 2124, 2135, 95 L.Ed.2d 740 (1987).

Defendants charged with criminal contempt are entitled to many of the same rights as other criminal defendants, including a trial by jury, right to counsel, the presumption of innocence, proof of guild beyond a reasonable doubt, and the right to refuse to testify against themselves. *Id.* at 481 U.S. 787, 798, 107 S. Ct. 2124, 2133, 95 L. Ed. 2d 740. A District Court's decision to enter a contempt order is reviewed for abuse of discretion, giving plenary review to conclusions of law and reviewing factual findings for clear error. *In re Medlock*, 406 F.3d 1066, 1071 (8th Cir. 2005). A sentence of imprisonment in the Court's discretion, up to and including life in prison, is available upon a finding (or verdict) of guilt for criminal contempt. *U.S. v. Ferrara*, 334 F.3d 774, 778 (8th Cir. 2003); *see also In re Medlock*, 406 F.3d at 1073; *United States v. Rauch*, 717 F.2d at 451. In *U.S. v. Ferrara*, the Eight Circuit affirmed at 125 month prison sentence for criminal contempt when the defendant violated a court order in connection with a fraud and misrepresentation scheme. 334 F.3d at 778. In affirming, the Eighth Circuit noted that a sentence up to life in prison was available for criminal contempt. *Id.*

In a case in the Southern District of Texas several years ago involving a violation of an injunction by a defendant in a lawsuit by Virgin Mobile (which is now part of Sprint), the defendant was prosecuted by the United States Attorney for criminal contempt, and was sentenced to fifty-seven (57) months imprisonment and three (3) years of supervised release. *U.S. v. Mubashir*, No. 4:06CV02444-001 (S.D. Tex. October 31, 2008). The judgment of contempt, including the sentence, was affirmed on appeal. *Virgin Mobile v. Mubashir v. U.S.*, No. 08-20731 (5th Cir. July 8, 2009). True and correct copies of the Order finding cause and setting the contempt proceeding for trial, and the minutes order from Mubashir's sentencing are attached hereto as **Composite Exhibit D.**

### YOAK IS GUILTY OF CRIMINAL CONTEMPT

"Sentences for criminal contempt are punitive in their nature and are imposed for the purpose of vindicating the authority of the court. The interests of orderly government demand that respect and compliance be given to orders issued by courts possessed of jurisdiction of persons and subject matter." *U.S. v. United Mine Workers of America*, 330 U.S. 258, 302-03, 67 S. Ct. 677, 700-01, 91 L. Ed. 884 (1947). Yoak's violations are numerous, knowing and willful.

Accordingly, Sprint respectfully requests the Court to issue an order to show cause or an arrest order pursuant to Federal Rule of Criminal Procedure 42(a)(1) and request that a criminal contempt prosecution be initiated against Yoak by the U.S. Attorney, unless the Court finds that the interests of justice require the appointment of another attorney or the government declines the request.

Dated: August 13, 2015.                        Respectfully submitted,

                                               */s/ James B. Baldinger*
Louis F. Bonacorsi, #28331 MO
BRYAN CAVE LLP
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
(314) 259-2000
(314) 259-2020 (facsimile)
Email: lfbonacorsi@bryancave.com

James B. Baldinger
Fla. Bar No. 869899 (admitted *pro hac vice*)
Stacey K. Sutton
Fla. Bar No. 289530 (admitted *pro hac vice*)
Amanda Romfh Jesteadt
Fla. Bar No. 073149 (admitted *pro hac vice*)
CARLTON FIELDS JORDEN BURT, P.A.
CityPlace Tower
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, FL 33401
(561) 659-7070
(561) 659-7368 (facsimile)

Email: jbaldinger@CFJBLaw.com
ssutton@CFJBLaw.com
ajesteadt@CFJBLaw.com
*Attorneys for Sprint Nextel Corporation and Sprint Communications Company, L.P.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served on this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF. I also certify that the foregoing document is being served this day on Defendant Jamie D. Yoak by e-mail to jamieyoak2@gmail.com and by U.S. Mail and FedEx to 3408 Sun Bear Court, Wentzville, MO 63385.

CARLTON FIELDS JORDEN BURT, P.A.

 /s/ James B. Baldinger
*Attorney for Plaintiffs*